## THE SHELTON COMPANY *vs.* THE BOROUGH OF BIRMINGHAM.

New Haven & Fairfield Cos., Oct. T., 1891. ANDREWS, C. J., CARPENTER, SEYMOUR, FENN and J. M. HALL, Js.

The plaintiffs constructed entrances into the basement of a block built by them on the line of a borough street, by steps extending four feet into the sidewalk, and used them, without objection on the part of the bor-

ough authorities, for twenty years. The charter of the borough gave it exclusive control over its streets and sidewalks, and, under the authority so given, the borough raised the grade of the sidewalk in such a way as to render the basement entrances substantially useless. Held that the borough was not liable for the damage.

The plaintiffs had acquired no right that could be asserted, by their occupation of a part of the sidewalk by the steps.

It is provided by Gen. Statutes, § 2703, that when any owner of land adjoining a public highway shall sustain special damage to his property by reason of a change of grade of the highway by the town, city or borough, he shall be entitled to recover the amount of such special damage. Held that, as the plaintiffs had acquired no right to keep the steps in the sidewalk, they were not sustaining any damage to their property by the raising of the sidewalk, so far as the steps were concerned.

The plaintiffs more than ten years before had constructed a concrete sidewalk in front of their premises. After the borough had raised the grade of the ground it ordered the plaintiffs to lay a concrete sidewalk thereon. The borough charter gave the borough power to order the construction of sidewalks by the owners of land on the streets. Held that the question whether the plaintiffs should lay the new walk at their own expense was not affected by the fact that the walk then existing had been laid by them at their own expense, and was in good condition, and that they could not recover the expense of the new walk from the borough.

[Argued October 28th, 1891—decided February 29th, 1892.]

APPEAL from an assessment of damages upon a city improvement; brought before *Studley, J.,* (of the Court of Common Pleas of New Haven County,) and referred to a committee, who made a report, against the acceptance of which the defendant borough remonstrated. The case was reserved, upon the remonstrance, for the advice of this court. The case is sufficiently stated in the opinion.

*W. S. Downs,* for the defendant, cited—Charter of borough of Birmingham, secs. 38, 47, 52, 55; Gen. Statutes, § 2703; *Lewis* v. *City of New Britain,* 52 Conn., 568; *Yale College* v. *City of New Haven,* 57 id., 8; *Durand* v. *Borough of Ansonia,* id., 70; *Manchester* v. *City of Hartford,* 30 id., 118.

*E. B. Gager,* for the plaintiff.

1. Can the plaintiff recover as special damage the necessary expense of a new sidewalk when the old sidewalk was sufficient, and when the new sidewalk was rendered necessary only by the change of grade ?   It appears from the finding that the plaintiff was put to an expense of $133.10 in laying the new sidewalk, curb and gutter, that the former walk was " good and sufficient," and that no other reason appeared or was claimed for a new walk except the changed grade.    That this is a special damage, as matter of fact, no one will dispute, nor was it disputed at the hearing.   But the claim is made that under the provisions of the borough charter it was the plaintiff's duty to lay the walk at its own expense, and that the case is within the principle of *Lewis* v. *New Britain*, 52 Conn., 568, which holds that where land was taken for a public street and damages assessed in favor of the land owners for the land taken, the expense of grading for and laying a sidewalk was not to be included in the damage.   But the reasoning of the opinion in that case does not, it seems to us, apply to the case now before the court. The true intent of the requirement that the property owner shall lay his own walks is, that the owner of land shall lay his walk originally (except in certain cases), and forever thereafter keep the same in repair, and that the warden and burgesses have no discretion further than to carry out this intent.    Any other interpretation of the law leaves it at the whim of a board to order up a perfect walk and put another in its place just like the one ordered up.    The warden and burgesses must exercise their discretion reasonably, without " a manifest invasion of private rights."    Morawetz on Corporations, §§ 94, 95 ; *Munson* v. *Mallory*, 36 Conn., 174 ; *Town of Suffield* v. *Hathaway*, 44 id., 527.    This interpretation, with the ten year limit in the proviso of section 47, protects the owner against an unreasonable burden.    The act of 1882, (Gen. Statutes, § 2703,) modified the borough charter, which was passed before that time, and gave a remedy where none existed before.    Whatever the provisions of the charter may have been, under this statute, if we show a special damage, we can recover ; and we can recover even

if the borough charter had in terms prohibited recovery. In this case the finding is that the former walk was "good and sufficient," and that the property is no better off as to sidewalks than it was before. Hence the plaintiff should be allowed for the expense of what did not benefit it at all. Again, if this expense is not allowed, it will result that the property owner, having done his duty in furnishing a good sidewalk, is compelled to pay a portion of the expense of changing the grade, for the grade of a street without qualifying words extends from street line to street line. *Durand* v. *Borough of Ansonia*, 57 Conn., 72. But neither the charter nor any principle of law requires or permits this.

2. Can the plaintiff recover as an element of damage for the increased inconvenience and expense caused by the practical destruction of the basement entrances or their extension further into the sidewalk? It is claimed that such recovery cannot be had, not because there is no damage, but because the warden and burgesses have sole and exclusive authority over the streets and sidewalks. Borough Charter, sec. 38. We fail to see the pertinence of this claim. The street is a city street with the building upon the street line. The building was constructed so that the basements could be used separately, and with entrances from the street, at a time when the grade permitted it. What were before convenient entrances are now " practically useless," or they must at increased expense and inconvenience be extended further into the sidewalk. The right of the public is only to pass along the walk. The entrances were before covered, and if extended would be required to be covered. It is difficult to see how the rights of the public or the power of the borough would be encroached upon. No question is made as to the power of the borough to raise the grade. But it makes our building less valuable, and the public should pay the damage. Otherwise private property is taken for public use without just compensation. It is admitted that loss of light and air by closing up the basement windows should be considered. Why not also loss of means of access?

3. Municipal charters go to great lengths in permitting the assessment of the cost of public improvements on private property under the guise of special benefits. In this case the finding of the committee is clear that the plaintiff has not been benefited by the changed grade, but is damaged $433.10; that the property is worth less by that amount. We respectfully submit that, unless settled rules of construction imperatively require it, the borough charter should not be so interpreted as to work injustice, and compel the plaintiff to assume any portion of this damage, and that its full remedial effect should be given to section 2703 of the General Statutes.

FENN, J. Upon the application of the Shelton Company for a re-assessment of damages, the judge of the Court of Common Pleas for New Haven County appointed a committee, who made a report against which the respondent borough remonstrated, and thereupon the questions of law arising were reserved for the advice of this court. There were two grounds of remonstrance. It appears from the report that the petitioner is the owner of land with a frontage of about one hundred and twenty-seven feet on Main street in said borough, and that the whole front is occupied by two brick buildings, containing stores and an office, with basements under the entire buildings; and that the buildings are built upon the line of the street. There are in the buildings six basement windows, and four basement entrances, consisting of steps projecting into the sidewalk about four feet, and laid to the sidewalk from the basements. The front entrances to the basement are covered with a flat board covering. There are also entrances to all of these basements from the rear on the company's land. The front entrances have been there since the construction of the buildings, about twenty years ago, and no objection has been made to them by the authorities of the borough, and no permission was ever granted to the company by the borough to locate them in the sidewalk, except as may be implied from their construction and use without objection.

Shelton Co. *v.* Borough of Birmingham.

The borough, pursuant to the authority of its charter, caused a change of grade, by which the surface of the street and sidewalk was raised about two feet at the east end of the petitioner's premises, which rise gradually diminished until at the westerly end it is about sixteen inches above the former grade. By this rise in grade, the basement steps are rendered practically useless; and to render them available they must be carried further into the sidewalk, at increased expense and inconvenience, to allow of access to the basements, and the basements are thereby rendered much less accessible and are permanently impaired in value. The basement windows are darkened and the value of the buildings injured. By these causes the committee found that the buildings have been damaged by the change of grade to the amount of $250. The borough objected to so much of the evidence as tended to show damage to the buildings because the front entrances leading into the basements were rendered practically useless, as above stated, on the ground that the borough had full power and authority over its streets and sidewalks, and that the Shelton Company had no right to occupy or appropriate the sidewalk in the manner aforesaid for the purpose of an entrance to the basements, so as to interfere with the right of the borough in, over and upon the streets and sidewalks. But the committee overruled the claim and admitted the evidence, and the borough duly excepted. And this furnishes one of the grounds of remonstrance; and since it is impossible to determine from the report of the committee what portion of the aggregate sum of $250, allowed for various causes enumerated, of which this is one, (and from its being the first one named and that in regard to which much is said, perhaps the principal item,) was allowed for this cause, it is manifest that if such evidence should not have been received, or such ground of damage entertained and supported, the report cannot be accepted.

By the provisions of the charter of the borough of Birmingham, (sect., 38) it is provided that "said borough shall have sole and exclusive authority and control over all streets,

sidewalks, public squares, public parks and highways, and all parts thereof, within its limits." This, however, is no exceptional or unusual power. The duty to keep in repair, and the liability in case of failure so to do, would never have been imposed by the General Statutes upon municipalities without the correlative power to control. If the petitioner has any right to compensation for the alteration in the grade of the walk, so far as the element now under consideration is concerned, it arises by virtue of General Statutes, § 2703, as the owner of land adjoining a public highway who sustains special damage *to his property*, by reason of a change of grade in the highway. But the petitioner can sustain no damage to his property unless the exercise of some beneficial right, incident or appurtenant to such property, has been impeded or impaired. It must therefore appear that there is, as appurtenant to such property, the right of approach, not outside of but within the limits of the public street, in a different manner from that of the public in general—the right of access below the surface—to use the sidewalk in a manner for which the general public have neither the occasion nor the power to use it; and in such a manner as is calculated to add to the risk of the public and to the liability of the borough. *Littlefield* v. *City of Norwich*, 40 Conn., 406. The existence of such a right would seem to be inconsistent with, and to render nugatory, the provisions of the charter which we have quoted. For how can the borough have "sole and exclusive authority and control" over a street in which a private person has a paramount and superior right, amounting to property, for the interference with which he is entitled to compensation, where such person is entitled to exercise a different and inconsistent control. If the borough cannot make the street more convenient for the public use without paying the petitioner damages because it thereby becomes less convenient for its private use, who has, in fact, control? And if the petitioner has such control and superior rights, how did it acquire them? Is it because it has used them for twenty years without either objection or permission? Prescription, as against private individ-

uals, is not wont to be made out in that manner. And is
it sufficient as against the public? When it becomes con-
ceivable that any one can make such a claim, which has not
yet been made by anybody, it will be time to meet it. But
it is not now. Is it incident to the ownership of the soil
charged with the public easement? That would be as
groundless to argue. *Woodruff* v. *Neal*, 28 Conn., 166. The
owner of the soil, as is there said, may, "*subject to the right
of the public*, take trees growing upon the land, occupy
mines, sink water-courses under it, and generally has a right
to every use and profit which can be derived from it con-
sistent with the easement." But so far from the public be-
ing liable, if their repairs make it more difficult for the
owner of the soil to take the trees growing, they may them-
selves take them if useful to make such repairs. So also
as to the mines and water-courses. Would a change of
grade make the public liable to the owner of the soil because
he had to descend further to reach the bottom of the one, or
dig deeper to make the other. A little pertinent language
on this point appears in the opinion of this court by BUTLER,
C. J., in *New Haven* v. *Sargent*, 38 Conn., 52–56. But
further, the establishment of such a doctrine as that claimed
by the petitioner would clearly require very great modifica-
tion of the views of this court, upon the liability of munic-
ipalities, as expressed in many cases. A single reference
will be sufficient, and that is to the case of *Beardsley* v. *City
of Hartford*, 50 Conn., 529, in which the opinion, written by
Judge LOOMIS, begins at page 536. In that case the base-
ment descent in question was on private property, extending
to but not into the line of the street, and it is said by the
court, (p. 539,) that the city had no power to erect a railing
that would simply fence in, in front and on the sides, the
basement stairway, because "it would have had to go upon
private ground to do this, and that it had no right to do. It
could only make a railing along the outer line of the side-
walk, in front of the stairway;" and that, the court says,
would not have furnished protection. Now it is manifest
that if, instead of modestly confining their entrances, by

steps, to their own premises, the adjoining owners, in that case, had seen fit to obtrude such steps into the premises of the public, as the petitioner has done, and if such entrances (which, in the case before us, could hardly have been of much use to the petitioner when closed with a flat board covering, as the report says, and hardly safe to the public when they were not,) could neither be ordered discontinued, fenced in, or made more inconvenient in any way to the private claimant, without liability on the part of the municipality therefor, the ground of the reasoning of the court fails. Then, again, the court says, on page 542, in enumerating certain special duties with regard to highways, resting on cities by reason of their character as such:—" One is that of having a more perfect road-bed for the greater amount of travel. Another, that of making sidewalks of ample width and generally flagged." But what becomes of such duty, or rather how is it to be exercised, if front entrances to basements of buildings erected on street lines, covered by flat board coverings, become vested rights, either when constructed, or when, after twenty years phenominal growth of the community, a change is desired which makes it more inconvenient for the owner of the building to use them in that form? On the whole, we cannot see how this element of damage was legitimate.

The committee further found that, at the time of making the change of grade, there was a good and sufficient concrete sidewalk in front of said building, which had been laid more than ten years prior to the change of grade in question. In order to make the grade of the sidewalk conform to the change in the grade of the street, it became necessary to lay a new sidewalk, and for that reason the borough, having filled the sidewalk to the proper level, duly ordered the petitioner to lay such sidewalk of concrete, which it did, and in so doing necessarily expended the sum of $133.10. The borough objected to any evidence relative to the laying of the sidewalk, and to the claim of damage by reason of the expense of the same, on the ground that under the charter of the borough it was the duty of the pe-

titioner to lay the same at its own expense. · The committee overruled this objection and admitted the evidence, and the borough duly excepted, and this constitutes the remaining ground of remonstrance.

By the charter, (Special Acts of 1878, p. 153, sect. 47,) the borough is given power to order the owners of lands to construct sidewalks in front of their premises, in such manner and with such material as directed, with a provision that when a sidewalk has been made by any person under such order, "and it is deemed necessary to alter or change the sidewalk, gutter, curb or railing in any way, within ten years after the said order has been complied with, then such change and alteration shall be done by said borough and at its expense." It does not appear whether the former sidewalk was in fact laid under any order, but, whether so or not, it does appear that it had been laid more than ten years. So that it did not come within the provision as to the borough constructing the sidewalk at its own expense, but did come within the former provisions of the section, which further provided that in such cases, in the event of neglect or refusal by the owner, the borough might execute, and the expense be a preferred lien on property in favor of the borough. It would seem, therefore, clear that it was the duty of the petitioner to construct this sidewalk at its own expense; and of course it could not be at its own expense if it would have a right in any form to recover it from the borough, for reasons fully stated in *N. York & N. Eng. R. R. Co.* v. *City of Waterbury*, 60 Conn., 1; and it would also seem equally clear that, as shown in *Yale College* v. *City of New Haven*, 57 Conn., 1, if it was not for any reason the duty of the petitioner to do it at its own ultimate expense, it ought not to have done it at all. As the court, PARDEE, J., says in that case, (p. 8,) "If a court of common council makes an order in reference to the construction of a sidewalk which requires the owner to do something which it cannot legally require him to do, he can protect himself, first, by an appeal to the Superior Court and the procurement of a reversal; or, secondly, he can neglect to obey the

order, and if the city should execute it, and attempt to enforce payment therefor against him by legal process, he can interpose the illegality of the order as his defence. But if, without appeal, he executes the order, there is neither express nor implied promise on the part of the city to reimburse him. Under such circumstances he is as a party to a cause permitting a judgment to stand against him without appeal. He is to be considered as having declared to the public that he would execute the work, as ordered, and at his own cost. And if any member of the board of public works had knowledge of such execution, he had the right to presume that he was doing the work in accordance with such declaration." Now, if such be the law in reference to a direct claim for compensation, not only the same reasons exist, but others may be added, as against the claim when sought to be enforced indirectly, as in the instance before us.

It will not escape notice that the order changing and establishing a new grade of the street in itself contained nothing in reference to an alteration of an existing walk or the construction of a new one. It is true this was found necessary, and so, after the borough had filled in, it ordered it. The finding says : " No vote of said borough, or other record evidence, was offered to show what the reason of said borough was in ordering said sidewalk ; but it appeared that it was done to make the grade of the sidewalk conform to the new grade of the street." Now, allowing the claim of the petitioner to be correct, what consequences follow? Suppose the order as to the new sidewalk had been deferred until after the time for appealing from the assessment of damages had gone by; what remedy would the petitioner have then had ? And if it would have had none then, would it be because there is a wrong without a remedy ; or is the converse true, that it is now seeking a remedy where there is no wrong ? In such a case, if the petitioner could claim damages at the time of the original change, it must have been based on the value of the old walk destroyed, and not on the expense of the new one, which might never be ordered ; and if it was, the cost of it could not be proved in

advance. If such would be the rule then, why is it not equally so now? If the old walk is good and sufficient still, after more than ten years' use, is its value, as a matter of law, the same as the cost of the new one, never used at all? Suppose the old walk had been gravel and the new concrete; or suppose the old had been, as in fact it was, concrete, and the new one had been ordered, as it might have been, of stone or other more expensive material. What could have been the measure of recovery then? And why? And if the petitioner may recover here, because a change of grade necessitates a new walk, might it not with equal propriety, if such change, made presumptively because of necessity for increasing convenience to increasing travel and business, carried with it a requirement for a made walk, where none before ever existed or was required? We ought not to amplify this further; nor is it necessary, for any man's reasoning will readily do it. But it does seem that such doctrine, if established, would require to be shorn of its natural and logical consequences, or would be productive of the most serious and burdensome results to all municipalities; for if, no matter how explicit and how ample charter provisions may be, it will be impossible for boroughs and cities in ordering the construction of walks to establish grades, and not only a change of an existing established grade, but the making of one in the first instance, would establish an arbitrary surface which would thereby differ from the previous natural one, if it would be impossible to do this without subjecting the municipality to the entire cost of construction directly, or worse still indirectly, by another doing the work and charging such municipality the expense, by way of special damage sustained to adjoining property, the burden laid upon such municipalities would be onerous in the extreme. The establishment of such a doctrine by the courts would, we think, lead at once inevitably and properly to the repeal by the legislature of any statute upon which such a construction could be placed. If such a claim as the petitioner makes was well founded, it would seem as if the plaintiff, in *Durand* v. *Borough of Ansonia*, 57 Conn.,

70, ought to have been held entitled to damages, on a ground which it indeed appears never occurred to his counsel or to this court.

But this whole question is entirely covered by the decision of this court in *Lewis* v. *City of New Britain*, 52 Conn., 568. In that case it was expressly held that where, by the charter of the city, the owners of lands adjoining a public street might be compelled, at their own expense, to grade their land for and construct sidewalks, the expense of grading and construction of sidewalks was not to be included in the assessment of damages at the time of the original taking. The reasons given need not be repeated. It is enough to say they are equally applicable here. Chapter 73, of the Public Acts of 1882, which is now section 2703 of the General Statutes of 1888, was in force when that decision was rendered, and what could not be regarded as an element of damage upon an original lay-out, in which all legitimate items of both general and special damage may be considered, cannot be so, for any conceivable reason, when a change is made in grade, for which only special damages to the property adjoining the highway can be taken into account. It would require some stretch of imagination and language to say that a change in the grade of an existing highway is equivalent to the lay-out of a new highway and constitutes an original taking. And when that is said, it would still be a far cry to claim that not only all the old elements must be reconsidered and re-estimated, but that new ones spring into existence, of a nature which the court has expressly repudiated upon such original lay-out and condemnation.

In our opinion the remonstrance should be sustained, and the judge of the Court of Common Pleas is so advised.

In this opinion SEYMOUR and TORRANCE, Js., concurred. ANDREWS, C. J., and CARPENTER, J., dissented.