APPEAL OF MINNIE G. PHILLIPS FROM THE BOARD OF STREET COMMISSIONERS OF THE CITY OF HARTFORD.

First Judicial District, Hartford, January Term, 1931.
MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued January 7th—decided April 6th, 1931.

*Cyril Coleman,* with whom, on the brief, was *Lawrence A. Howard,* for the appellant.

*Roger Wolcott Davis,* for the respondent.

MALTBIE, C. J. This is an appeal from an appraisal of damages and an assessment of benefits due to the widening of Windsor Avenue, now North Main Street, in the respondent city. The appeal was taken, under the charter of the city, to the judge of the Court of Common Pleas for Hartford County, was referred to a committee, and from the judgment upon that report both parties have appealed to this court. In this opinion we shall speak of the appellant before the judge of the Court of Common Pleas as the appellant here.

The appellant owns land abutting upon the west side of the street. In 1862 a building line was established by the city across the property fifteen feet back from the street line. About 1882 a building was erected upon the property, and still stands, which extends about five and sixty-nine hundredths feet over the building line. The improvement now in question consisted of the establishment of a new street line ten feet westerly of the old street line, so that the appellant's building now extends sixty-nine hundredths of a foot over the street line. One of the appellant's claims was that she was entitled to damages based upon the cost of the reconstruction of the building which would be necessary to make it conform to the new street line, while the claim of the respondent was that no such damages should be awarded. The committee made its report as to the damages to be allowed in the alternative, according as one or the other of these claims should be upheld, and the judge of the Court of Common Pleas upheld the respondent's contention and allowed no damages for the reconstruction of the building.

In so far as his decision was based upon the conclusion that, as the city had not ordered the removal of the portion of the building which encroached over the street line, no damages should be allowed, he was

in error. The establishment of a new street line was a taking of the land between it and the old line. The appellant was entitled to damages measured by "the difference between the market value of the whole tract as it lay before the taking and the market value of what remained thereafter and after the completion of the public improvement." *Martin* v. *West Hartford,* 93 Conn. 86, 88, 105 Atl. 342; *McGrath* v. *Waterbury,* 111 Conn. 237, 242, 149 Atl. 783. The cost of actually adapting the building to the new situation created by the change of the street line would not in itself be the measure of the damages but merely one method of determining what those damages would be. *Staite* v. *Smith,* 95 Conn. 470, 473, 111 Atl. 799. It is the taking of the appellant's property by the widening of the street and not the fact of her adaptation of her building to the new line which determines her damages. *McGrath* v. *Waterbury, supra,* p. 241; *Hay* v. *Commonwealth,* 183 Mass. 294, 37 N. E. 334. Such a proceeding, says Shaw, C. J., in *Parks* v. *Boston,* 32 Mass. (15 Pick.) 198, 208, "is not strictly speaking an action for damages; but rather a valuation or appraisement of an incumbrance created on the plaintiff's estate, for the use of the public. It is the purchase of a public easement, the consideration for which is settled by such appraisement only because the parties are unable to agree upon it. The true rule would be, as in the case of other purchases, that the price is due and ought to be paid, at the moment the purchase is made, when credit is not specially agreed on. And if a pie-powder court could be called on the instant and on the spot, the true rule of justice for the public would be, to pay the compensation with one hand, whilst they applied the axe with the other." If, after the land has been taken, the city permits a portion of a building to stand beyond the street line, it is a matter of grace and, un-

less its rights are lost by abandonment or otherwise, it may at any time thereafter remove or require the removal of that portion of the building without obligation to make further compensation to the owner. *Shelton Co. v. Birmingham,* 61 Conn. 518, 24 Atl. 978.

In 1862 and until sometime subsequent to the erection of the building in question, the charter of the city gave its common council power to pass ordinances "regulating the mode of building or altering buildings within said city, or any part thereof, and the mode of using any building therein." 5 Special Laws, 481. The appellant recites in her brief an ordinance of the city which she says was enacted under this charter provision and which, as it there appears, forbade any person to erect, add to, remove or place any building without the consent of the court of common council. The existence and terms of this ordinance are not found by the committee and we do not take judicial notice of the ordinances of cities. *Young v. West Hartford,* 111 Conn. 27, 31, 149 Atl. 205. But even if we did we would not be able to accept the contention of the appellant that, from its existence and the construction and maintenance of her building over the building line a presumption of a valid location would arise. Permission to the then owner of the appellant's land to locate the building over the building line would be a grant to him of an individual privilege withheld from the other property owners across whose land the line runs and could hardly be regarded otherwise than as a violation of the constitutional guarantee against the denial to any person of the equal protection of the laws. *Morton v. Holes,* 17 N. D. 154, 158, 115 N. W. 256. Nor is it probable that the common council, having established a building line, would knowingly grant to any individual the right to build over it. Such a presumption as the appellant claims

must rest upon general experience or probability or else on policy and convenience, and in this instance neither the policy of the law nor reasonable probability can be invoked to sustain it. *State* v. *Racskowski,* 86 Conn. 677, 683, 86 Atl. 606; *New York, N. H. & H. R. Co.* v. *Armstrong,* 92 Conn. 349, 357, 102 Atl. 791.

The appellant further claims that by the maintenance of the building over the building line from the time of its construction in 1882 until the present proceeding, a right to continue it in that location has come into existence. In *Derby* v. *Alling,* 40 Conn. 410, 436, we said: "There is no statute of limitations which as such is applicable to this case. The public could not be technically disseized, but public as well as private rights may be lost by unreasonable delay in asserting them. They may also be lost by an abandonment of them by those interested in their enforcement. Such abandonment may be inferred from circumstances or may be presumed from long continued neglect." See also *Kent* v. *Pratt,* 73 Conn. 573, 581, 48 Atl. 418; *Yale University* v. *New Haven,* 104 Conn. 610, 619, 134 Atl. 268. While in *Derby* v. *Alling, supra,* our language suggests that an "unreasonable delay in asserting" public rights and an abandonment of them are alternative ways in which they may be lost, our law has since crystallized into the principle that it is only by abandonment that such rights can be lost through failure to assert them and a delay in doing so is only evidence of such abandonment. "A highway may be extinguished by direct action through governmental agencies, in which case it is said to be discontinued; or by nonuser by the public for a long period of time with the intention to abandon, in which case it is said to be abandoned. The length of time during which such nonuser must continue on the part

of the public, before the highway can be presumed to be abandoned, has not been determined in this State by statute or judicial decision. It must be a long time." *Greist* v. *Amrhyn,* 80 Conn. 280, 285, 68 Atl. 521. A road "cannot be curtailed in its width by the encroachments of adjoining proprietors without unmistakable evidence of abandonment upon the part of the town." *Appeal of St. John's Church,* 83 Conn. 101, 105, 75 Atl. 88. Abandonment in this jurisdiction is a question of fact. *Richardson* v. *Tumbridge,* 111 Conn. 90, 93, 149 Atl. 241. It implies a voluntary and intentional renunciation, "but the intent may be inferred as a fact from the surrounding circumstances." *Newkirk* v. *Sherwood,* 89 Conn. 598, 605, 94 Atl. 982, 984; *New London* v. *Pequot Point Beach Co.,* 112 Conn. 340, 347, 152 Atl. 136. The committee in its report has not found that the respondent had abandoned its rights to require the removal of the portion of the building extending beyond the building line and the claim of the appellant in this regard can only be sustained if we can say as matter of law that there has been such an abandonment. The only facts of record bearing upon this issue are the construction and subsequent maintenance of the building extending over the line. Its position did not interfere with traffic on the highway nor so far as appears in any way with the rights of the public and there may well have been no occasion to interfere with it. In *New York, N. H. & H. R. Co.* v. *Cella,* 86 Conn. 275, 85 Atl. 521, we had a very similar situation before us; a building encroaching upon a railroad right of way had been maintained under a claim of right for more than eighty years; yet we held that the question of abandonment of its rights by the railroad was one of fact for the jury. Under the facts in this case we cannot say that as matter of law there had been an abandonment by the city of its

right to require the removal of the building. As it was an unlawful encroachment the damages to be paid upon the widening of the street could not properly include any expenses involved in adapting it to the new street line. *Hawley* v. *Harrall*, 19 Conn. 142, 153; *Shelton Co.* v. *Birmingham*, 61 Conn. 518, 24 Atl. 978; *Rogers* v. *New London*, 89 Conn. 343, 349, 94 Atl. 364.

The land of the appellant consisted of a tract on the corner of Windsor Avenue and Mather Street, fronting about forty-four feet on Windsor Avenue, widening toward the rear and running along Mather Street for something over one hundred feet. In addition to the building on Windsor Avenue we have been considering, there was another building on the rear of the premises fronting on Mather Street and used for residential purposes. The appellant claimed to the committee that the tract should be treated as two separate parcels, the one fronting on Windsor Avenue to be regarded as having a depth of eighty-five feet, which should be considered the limit of Windsor Avenue influence; while the city claimed that, as the Windsor Avenue frontage was the dominant frontage, that one hundred feet is the accepted standard depth of a business lot, and that the tract in question was a business lot, the Windsor Avenue frontage should be considered as running to the depth of one hundred feet. The committee adopted as the basis of his award of damages the contention of the city, and, as it appeared that land in the strip taken had the same value by area as the remainder of the tract, he arrived at the amount of damages for the taking of the ten-foot strip of land by awarding an amount representing the same proportion of the value of the tract as a whole as the area of the strip taken bore to the whole area of the tract. When the committee came to assess benefits, he adopted ten per cent of the value of the

remaining land affected by the improvement as the measure of their amount and found that value by deducting from the value he had placed on the tract one hundred feet in depth in awarding damages, the value of the ten-foot strip taken. Thus in effect he assessed benefits upon the basis of a portion of the tract extending back ninety feet from Windsor Avenue. The contention of the city is that he should have taken as the basis of his calculation a depth of one hundred feet from the new street line.

Where a part of a tract of land is taken by condemnation, both in awarding damages and assessing benefits the tract should be considered as a whole and the authority making the award or assessment cannot properly adopt an arbitrary division not corresponding to the actual situation or use of the land. *Currie* v. *Waverly & N. Y. B. R. Co.*, 52 N. J. L. 381, 20 Atl. 56; *Cox* v. *Mason City & Fort Dodge Ry. Co.*, 77 Iowa, 20, 41 N. W. 475; *Wolfort* v. *City of St. Louis*, 115 Mo. 139, 144, 21 S. W. 912; *Moale* v. *Mayor of Baltimore*, 61 Md. 224, 238; 2 Nichols on Eminent Domain (2d Ed.) p. 743; 1 Page & Jones on Taxation by Assessment, § 631. There is, however, nothing unreasonable or illegal, where only a portion of the tract is affected in its value by the taking, in disregarding the remainder in the calculation of the award or the assessment. *Young* v. *West Hartford*, 111 Conn. 27, 34, 149 Atl. 205. This was the method adopted by the committee in his award of damages. When, however, he came to assess benefits, he seems to have regarded the one hundred foot depth he used in appraising the damages as in effect establishing a lot of that depth upon which the benefits were to be assessed. The same considerations which led him to look upon a depth of one hundred feet from the old street line as a portion of the tract the value of which

was to be considered in awarding damages point logically to a similar depth from the new street line as the portion of the tract the value of which would be increased by the widening of the street. If there are other considerations which lead to the conclusion that a depth of only ninety feet from the new street line should be considered as increased in value by the widening, the report is silent as to them. Upon its face the conclusion of the committee is not logical nor reasonable and the remonstrance of the city should have been sustained.

There is error, the judgment is set aside and the case remanded with direction to sustain the remonstrance of the respondent and recommit the report for further proceedings as to the assessment of benefits only.

In this opinion the other judges concurred.