[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 8495
On December 29, 1995, Hi-Way Realty submitted an application to the New Milford Zoning Commission seeking approval of a site plan in connection with the proposed use of a parcel of land containing 15,597 square feet located at 315 Danbury Road a/k/a Connecticut Route 7 to construct a gasoline filling station thereon. (Record #1).
Hi-Way Realty also submitted an application to the New Milford Inland Wetlands Commission to seek permission to conduct a regulated activity on the Hi-Way Realty site in connection with its proposal to construct a gasoline service station thereon. That application, subject to a number of conditions, was granted on April 25, 1996. (Record #21)
The Hi-Way Realty site application was considered by the Commission at its meetings of January 9, 1996 (Record #3), January 23, 1996 (Record #6), February 13, 1996 (Record #13), February 27, 1996 (Record #17), April 25, 1996 (Record #21), and May 7, 1996 (Record #23). The Commission denied the Hi-Way Realty application for site plan approval at its meeting of May 7, 1996 (Record #23) and published notice of its decision in The New Milford Times on May 17, 1996 (Record #24). Hi-Way Realty appealed the decision of the Commission to this court on May 21, 1996.
The issue to be decided by this court is whether or not the zoning commission of the town of New Milford acted illegally, arbitrarily or in abuse of the discretion vested in it in denying the application of Hi-Way Realty for site plan approval.
The plaintiff, a general partnership, is the owner of the property involved in the site plan application denied by the Commission, and was also the applicant. As a result, it is aggrieved by the Commission's decision and has standing to maintain this appeal. Winchester Woods Associates v. Planning andZoning Commission, 219 Conn. 303, 308; Bossert Corporation v.City of Norwalk, 157 Conn. 279, 285.
The plaintiff, Hi-Way Realty filed a site plan application with the Commission for property at 315 Danbury Road, also known as Route 7, in New Milford on December 28, 1995. (Exhibit 1) The subject property has an area of 0.3588 acres, contains a building CT Page 8496 and other improvements, and is located in title B-2 Business zone. The plaintiff proposed to construct a gasoline filling station on the property. The Commission officially received the application at its meeting on January 9, 1996. (Exhibit 3) A report of the zoning enforcement officer (Exhibit 2) was then read into the record. The previous use of the property was as an assembly hall for a grange. The building was an assembly hall, which was a permitted use in the business zone under item #11 of the permitted uses, and the proposed gasoline station was also a permitted use. (Exhibit 3, Meeting of January 1996, p. 4) The existing building would not be entirely demolished, as a portion of the rear and south walls would be utilized for the new building.
Section II-IIIB of the Zoning regulations contains the uses permitted as a matter of right in the B-2 Zone, subject to site plan approval by the zoning commission. When the application was filed and pending before the Commission, the permitted uses included under subsection B(1), "uses permitted in a B-1 Restricted Business Zone," and (7) "garage for the repair of motor vehicles; gasoline or motor fuel filling stations." (New Milford Zoning Regulations, Exhibit 31, p. 2-15) The uses permitted as a matter of right in the B-1 Restricted Business Zone included an "assembly hall" § II-IIIB(11); Exhibit 31, pp. 2-12 and 2-13. The grange assembly hall existed prior to the adoption of zoning regulations in New Milford, which made it a nonconforming use, but in fact, it was also a permitted use as an assembly hall in the B-2 Zone. The site plan submitted reduced the total amount of parking on the property to three parking spaces, one on the south and two on the north side of the property. While located within the setback areas, the location of the parking spaces coincided with areas previously used for parking.
Both the existing use of the subject property for an assembly hall and the proposed use for a gasoline station were permitted uses under the zoning regulations. They were not nonconforming uses. The building itself did not violate any of the zoning regulations for the B-2 zone such as height, bulk or coverage, so the building was also a conforming use. There is no minimum lot size provision in the zone, and the lot meets all shape, size and frontage provisions. It was not a nonconforming building and the proposed use of it was for a permitted use. The only nonconformity was as to the location of the building and that part of it extended over the front and rear setbacks. CT Page 8497
As shown on the original site plan maps, the existing building is much larger than the proposed gas station and extends to a much greater extent across both setbacks. The proposed gas station is smaller, and it does not extend over the setbacks at any location not presently physically occupied by the existing building. As a result, any nonconformity as to location is being reduced, and not increased. The entire existing building is not being demolished; part of it is being retained for the gas station. The overall reduction of the intrusion over the setbacks appears from the maps to be about 90%. Some of the proposed pumps were eliminated from the final plan, and the remaining ones are not over the setbacks. To summarize, there is no nonconforming use or structure on the property, no extension of a nonconforming building and no extension of the nonconformity as to the location of the building or improvements. The number of parking spaces over the setbacks has also been reduced, and no parking has been placed in a new location. The number of parking spaces complies with the minimum required by the zoning regulations.
Nonconforming uses are protected by § 8-2 of the General Statutes, which provides in part that "zoning regulations shall not prohibit the continuance of any nonconforming use, building or structure existing at the time of the adoption of such regulations." In addition, a lawfully established nonconforming use is a vested right entitled to constitutional protection.O G Industries v. Planning and Zoning Commission, 232 Conn. 419,430; Petruzzi v. Zoning Board of Appeals, 176 Conn. 479, 483-84;Lampasona v. Planning and Zoning Commission, 6 Conn. App. 237,239. In addition, § 8-13a of the General Statutes protects nonconforming buildings and gives them a status of a nonconforming use where they exist over the setback lines for over three years, although the building in this case is not created by a zoning violation, but rather the enactment or a change in the zone regulations, which affected the existing building. There are basically four types of zoning nonconformity: (1) a nonconforming use — namely, the use of the land or structure on it is nonconforming; (2) a nonconforming lot — the lot is undersized, irregularly shaped, has inadequate width or depth or inadequate frontage; (3) a nonconforming building or structure — the structure does not meet the minimum or maximum size requirements, height or bulk requirements of the existing zoning regulations; and (4) nonconformity as to location of a structure, namely noncompliance with one or more of the setback requirements. See Land Use Law and Practice, § 52.1, p. 840 (Exhibit 3, p. 4.) The prohibition of expansion of nonconforming CT Page 8498 uses applies only to the aspect of use or structure which is nonconforming, in this case nonconformity as to the location of a structure over the setbacks.
In the case of Petruzzi v. Zoning Board of Appeals of Townof Oxford, 176 Conn. 479, the property was in a residential zone and was used as a church, which was a permitted use in the zone. The church building, which existed before the first zoning ordinance in the town became nonconforming as to the setback requirements when the town adopted zoning, and later changes to the zoning regulations imposed additional area and frontage requirements which the property could not meet. As a result, the building was then on a nonconforming lot, and the building itself was nonconforming as to the setbacks. Id., 480. After the plaintiffs purchased the property, they proposed to convert the church building (a permitted use) into a single family residence which was also a permitted use in the district. The only change proposed for the property was to substitute one permitted use for another permitted use. The legally existing nonconformities, namely the undersized lot and the location of the building over the setback lines, remained unchanged. The court found that the lot and building were legally existing nonconformities which did in fact meet the requirements of the zoning regulations, and that § 8-2 of the General Statutes protected the nonconforming aspects of the property from changes in the zoning regulations.Id., 483.
There is no question but that the present use of the property as a grange hall is a permitted use and that the setback violation is a pre-existing nonconforming use. Likewise, it is clear that a gas station is a permitted use and that the proposed building will be smaller in size with less parking.
The defendant takes the position that since a major portion of the existing building will be removed, the plaintiff will thereby abandon its pre-existing nonconforming use. The Commission states in its brief as follows:
"The site plan presented to the commission for its approval states that `proposed development of the site consists of razing the wood frame building and constructing a gas station in its place; together with the necessary parking area, well, and septic system.'
"The intentional demolition of the existing nonconforming CT Page 8499 building by the owner thereof or its agent would clearly constitute the abandonment of that use including all uses accessory thereto. Once it is established that a nonconforming use has been abandoned any further use of the property must be in conformance with the standards set forth in the zoning regulations."
As stated in Blum v. Lisbon Leasing Corporation, 173 Conn. 175,181:
 it is a well established rule that before a nonconforming use can be found to have been abandoned, there must be an intention on the part of the owner to relinquish permanently the nonconforming use. Dubitzky v. Liquor Control Commission, 160 Conn. 120, 125, 273 A.2d 876; Darien v. Webb, 115 Conn. 581, 162 A. 690. As we stated in Bianco v. Darien, 157 Conn. 548, 556, 557, 254 A.2d 898: "`Abandonment in this jurisdiction is a question of fact. Richardson v. Tumbridge, 111 Conn. 90, 93, 149 A. 241. It implies a voluntary and intentional renunciation "but the intent may be inferred as a fact from the surrounding circumstances.' Newkirk v. Sherwood, 89 Conn. 598, 605, 94 A. 982, 984." Appeal of Phillips, 113 Conn. 40, 46, 154 A. 238. (Emphasis supplied)
See also Commission v. Tripp, 204 Conn. 67, 93; Adolphson v.Zoning Board of Appeals, 205 Conn. 703. 83 Am.Jur.2d 683. Zoningand Planning.
The plaintiff clearly had no intention to abandon its pre-existing nonconforming use. To the contrary its application proposes to raze the wood frame building and construct a gas station in its place. No reasonable construction of the plaintiff's application could be interpreted as an abandonment of a pre-existing nonconforming use. The non-conformity was not the building itself, but its location.
Finally, the decision of the Commission ignores Section X1-117 of its regulations which states that "a non-conforming use of a structure may be changed to a non-conforming use or changed to a use less nonconforming than its present use." The proposed changed fits squarely within that provision.
The court finds that the site plan denial by the Commission was contrary to law and therefore arbitrary. For the reasons CT Page 8500 stated, the appeal is sustained.
PICKETT, J.