THE TOWN OF KENT vs. BIRDSEY G. PRATT.

First Judicial District, Hartford, January Term, 1901.
ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

Chapter 286, § 5, of the Public Acts of 1895, provides that upon application of the owner of land adjoining a highway the municipal authorities shall place stone or iron bounds to mark the highway limits. *Held* that the municipal authorities were not authorized by this Act to conclusively establish controverted boundaries, but merely to mark by permanent bounds the location of undisputed highway lines.

The failure of the trial court to treat, as material, facts established by the evidence which might, and presumably would, have influenced its conclusion, had they been considered, furnishes ground for a new trial.

In an action to restrain the defendant from erecting a fence within the alleged limits of a highway, it was averred in the complaint and admitted by the answer that the road was laid out by the County Court in 1828, that since 1895 the defendant had owned land lying on the east side of the highway, and that at his request the selectmen of the plaintiff town had placed iron bounds to mark said east line. The fifth paragraph of the complaint alleged that said bounds were placed on the true and correct line, and as that had existed for more than fifty years. This allegation was denied, as well as the subsequent allegations to the effect that the defendant had unlawfully erected a fence twenty feet west of said established line and partly in the traveled path of the highway, and that said fence narrowed and obstructed the highway and constituted a public nuisance to travel thereon. The trial court ruled that upon this branch of the case the sole question was whether the line marked out by the selectmen in 1895 was coincident with the east line of the highway as laid out by the County Court in 1828. *Held* that the question whether the strip of land in dispute had become part of the existing highway, by dedication, was also within the issue, and that the court erred in treating the facts bearing upon that question as immaterial.

The character, extent and duration of the use which has been made of land with the full knowledge of its owner and without his dissent, and the public and private rights claimed to have been acquired thereunder, may be such that the law will conclusively presume an intent upon the part of the owner to dedicate the land to public use.

The facts in the present case reviewed and *held* to justify the presumption of an intent to dedicate.

Argued January 2d—decided March 8th, 1901.

ACTION to restrain the defendant from erecting and maintaining a fence within the alleged limits of a certain highway, and from commencing or pursuing any civil action against the selectmen of the plaintiff town for their removal of such a fence erected by the defendant, brought to the Superior Court in Litchfield County and tried to the court, *Shumway, J.;* facts found and judgment rendered for the defendant, and appeal by the plaintiff for alleged errors in the rulings and findings of the court. *Error and new trial granted.*

The case is sufficiently stated in the opinion.

*Leonard J. Nickerson* and *J. Henry Roraback*, for the appellant (plaintiff).

*Arthur D. Warner* and *James Huntington*, for the appellee (defendant).

HALL, J. A highway running north and south in the town of Kent, and called the Bulls Bridge highway, intersects a highway running east and west called East and West Street. The defendant owns property on the southeast corner of these streets. The question in dispute is whether a triangular strip of land in front of the defendant's premises, on the east side of Bulls Bridge highway, about seventeen feet in width at East and West Street and extending southerly to a point, is or is not a part of the highway.

In 1895 the selectmen of the town, upon the written application of the defendant, undertook to establish the east line of the street, under the belief that they were authorized to do

so by the provisions of § 5 of Chap. 286 of the Public Acts of 1895, p. 633, and for that purpose placed iron bounds, as provided by said Act, along the line of a fence then standing and apparently marking the street line, and which, as hereinafter stated, was erected by one Conn in 1868. The defendant, after said bounds had been so placed by the selectmen, claiming that said fence and bounds did not mark the east line of the highway, as established by a lawful layout made in 1828, and hereinafter described, and that the line so established in 1828 was the true line of the highway, took up said fence and moved it further to the west, so that the northerly end of the same at East and West Street was about seventeen feet further west. The selectmen moved the fence back to its former position; and the present action is for the purpose of preventing the defendant from again placing the fence upon what the plaintiff claims is a part of the highway.

There were three questions to be decided by the trial court: (1) Was the east line of the highway conclusively determined by the action of the selectmen to be the line so marked by them by the iron bounds? (2) If not, was the line so marked by the selectmen the east line of the highway as laid out in 1828? (3) If not, had the line so marked by the selectmen become the east line of the highway by the acts of the owners of the adjoining land and by public use?

The trial court rightly held that the line of the highway was not finally determined by the action of the selectmen.

The purpose of the provisions of § 5 of Chap. 286 of the Public Acts of 1895, was not to constitute the selectmen of the town judges to determine the location of disputed street lines, but to enable the owners of land upon highways to have the public authorities place such enduring bounds upon undisputed street lines as would permanently mark their location. Chapter 142 of the Public Acts of 1895, p. 517, which was in force at the time the bounds in question were placed, provided a method for procuring lost and uncertain bounds to be established, by complaint to the Superior Court and the appointment of a committee. This Act was repealed by Chap. 115 of the Public Acts of 1899, p. 1047, which provides for

an application to the selectmen, with a right of appeal from
their decision to the Superior Court.

The second question, as one of fact, the trial court decided
against the contention of the plaintiff, and sustained the de-
fendant's claim that the fence when moved by him was placed
substantially upon the east line of the highway as established
by the layout of 1828.

Upon the third question the court ruled adversely to the
plaintiff's claim, possibly upon a mistaken opinion that it was
not raised by the pleadings, and that the determination of the
second question was decisive of the case. That such was the
view of the trial judge seems to be indicated by the lan-
guage of the memorandum of decision, that " the issues in the
case are really narrowed to that joined upon paragraph 5 of
the complaint," and also by the rulings of the court that the
facts assumed in certain of the plaintiff's claims of law were
not proven by the facts found.

While some support for that view may be found in the fact
that the complaint alleges that by the proceedings had in the
County Court in 1828, the Bulls Bridge highway was "laid
out and opened to the public ; " that the defendant owns land
bounded westerly by the highway, before mentioned, as laid
out by the County Court; and by the allegations of para-
graph 5, which are denied by the answer, that the bounds were
placed by the selectmen on the correct east line of said high-
way,—we think the allegations of the complaint in the sub-
sequent paragraphs, which are also denied by the answer,
sufficiently allege an unlawful encroachment by the defendant
upon the highway used by the public, and that therefore the
question whether the strip of land in dispute had become a
part of the highway by dedication, was within the issues
framed by the pleadings. *Hartford* v. *New York & N. E. R.
Co.*, 59 Conn. 250.

The claim of a public right of way by dedication of the
owner was sufficiently made by the plaintiff in his claims
of law in the trial court, among which are these : " If the
highway was laid out and the eastern line thereof was where
claimed by the defendant, then such layout had never been

opened or used, and the limits of such highway became and were as used by the public, and the fences marking the lines thereof for over fifteen years became and were the lawful lines and boundaries of said highway. . . .

" That if the boundaries of the highway as laid out in 1828 had been changed, and such changes had been acquiesced in by the adjoining owners for fifteen or more years, such acts established a new line and the old one could not be restored."

Upon the latter of these, as upon certain other of the plaintiff's claims, the court did not specifically rule, upon the ground that the facts assumed therein had not been proved. It follows, then, that if the facts found show a title by dedication, the judgment of the trial court was erroneous.

Before discussing those facts we ought to refer to certain exceptions in the appeal and to the refusal of the trial judge to correct the finding of facts, the evidence bearing upon which has been certified to this court.

Upon the undisputed facts appearing in the record, we think the plaintiff was entitled to a finding that the fence erected, as hereinafter stated, by one McCoy, on the west side of the highway, after the layout of 1828 and prior to 1834, and which remained until 1898, was calculated to lead the public to believe that it marked, and so was designed to mark, the divisional line between the dooryard of the McCoy premises and the land which might be used by the public for the purposes of a highway; and that the same is true of the fence erected by Conn in 1868, and moved by the defendant in 1897; and that the defendant, since at least 1868, has known of the existence of these fences and that the use of the highway was confined within the limits thus marked. The finding should therefore have been corrected as above indicated.

We do not think that it is clear from the language of the finding that the court intended to state that the use which is described as having been " under an implied license from the owner of the premises," was of any other land than the passway referred to in the preceding paragraphs, which existed

prior to 1868 and the use of which was afterward prevented by the erection of the Conn fence.

The facts as thus settled point to the conclusion that the *locus in quo* is within what has become a highway by dedication. "Dedication is an appropriation of land to some public use, made by the owner of the fee, and accepted for such use by and in behalf of the public." *Green* v. *Canaan*, 29 Conn. 157, 159. It implies two things: an intention on the part of the owner to devote it to a public use, and an acceptance of it for such use by the public. *Williams* v. *New York & N. H. R. Co.*, 39 Conn. 509, 519. No particular formality is required in order to dedicate land to a public use. A dedication may be express, as where the intention to dedicate is expressly manifested, as by an explicit oral or written declaration or deed of the owner, or it may be implied from the acts and conduct of the owner of the land, from which the law will imply such an intent. Elliot on R. & Sts., p. 90; Ang. on Highways, § 143; *Noyes* v. *Ward*, 19 Conn. 250, 264; *Dunn* v. *Sanford*, 51 id. 445. An implied dedication, which arises by operation of law from the conduct of the owner of the property, rests upon the broad common-law doctrine of equitable estoppel. *Guthrie* v. *New Haven*, 31 Conn. 308, 321; *New York, N. H. & H. R. Co.* v. *New Haven*, 46 id. 257, 262. It proceeds upon the principle, says Judge Storrs in *Noyes* v. *Ward, supra*, p. 267, "that the owner, after having permitted the public to use his land for the purpose for which it is claimed to have been dedicated, under such circumstances that the public accommodation and private rights, supposed to be acquired in consequence of such permission, might be injuriously affected by an interruption of such enjoyment, is held to be precluded from denying that the public have acquired a right to such use in whatever manner, on the ground that such denial would be, on his part, a violation of good faith. This doctrine, so far from proceeding on the ground that such enjoyment was adverse and in hostility to the rights of the owner, supposes that it was with his assent."

While it is true that an intent to dedicate must in all

cases be clearly shown to establish a valid dedication, it is not necessary that an actual intention should be found to have existed in the mind of the owner, at the time of the alleged dedication, to appropriate his land to a public use. It is the purpose as manifested by his acts, rather than the intention actually existing in his mind, which the law regards as essential to an implied dedication. *Morgan* v. *Railroad Co.,* 96 U. S. 716; *Columbus* v. *Dahn,* 36 Ind. 330; *Indianapolis* v. *Kingsbury,* 101 id. 200. " The public as well as individuals have a right to rely on the conduct of the owner as indicative of his intent. If the acts are such as would fairly and reasonably lead an ordinarily prudent man to infer an intent to dedicate, and they are so received and acted upon by the public, the owner cannot, after acceptance by the public, recall the appropriation." Elliot on R. & Sts. p. 92; *Smith* v. *State,* 3 Zabr. 130, 712. But this doctrine might not be applicable where the owner of the land, without negligence, acted in ignorance of his rights. We think it clear that the facts may be such as to amount to a dedication, without an express finding of an intention to dedicate, and that the amount, character, duration and circumstances of the use which has existed with the full knowledge of the owner of the land, and without his dissent, may be shown to be such, and the public and private rights and interests acquired under a supposed dedication such, that the law will conclusively presume the intent to dedicate.

The facts relied upon as showing a dedication in the present case, are these : In 1828 the Bulls Bridge highway was laid out by the proceedings had in the County Court described in the record, and the location of the east line thereof as so laid out, which was the only line described in the layout and survey, has been fixed by the finding as that upon which the defendant placed his fence when he moved it in 1897. The highway by the layout was required to be three rods wide, and the west line as so laid out would run through the middle of the McCoy house on the west side of the street. Soon after the opening of the street, and prior to 1834, the said McCoy built a fence running in front of his

premises southerly from East and West Street and about six feet east of his house, which remained until removed in 1898, marking the western limit of the highway as used by the public during that period. The distance from the northerly end of this fence to the east line of the highway as laid out in 1828, was less than two rods. Said McCoy, who owned the land on the west, and who also owned a strip of land lying east of the east line of the highway as laid out in 1828, and between said line and land owned by one Chittenden (now owned by the defendant), deeded a part of said strip to said Chittenden, in which deed it was stipulated that the said Chittenden should never " build up or lay any incumbrance in front of said described tract on said new road," and that said McCoy should never " build or lay any incumbrance in front of said tract within two rods of said westerly line of said premises." Until 1868 the land for a distance of about one hundred feet east from the said McCoy fence remained uninclosed. The remainder of the strip of land belonging to McCoy on the east side of the line laid out in 1828, consisting of a triangular piece with its base near East and West Street, was conveyed by him in 1837, subject to his said agreement with Chittenden, and in 1868 by one to whom the same had been conveyed subject to the same agreement, to one Conn. Said Conn, then owning all the premises now owned by the defendant, built a fence along the easterly side of said highway, extending southerly from said East and West Street, on the line afterwards marked by the selectmen by bounds in 1895, which said fence remained, indicating the east line of the highway as used by the public, until it was moved by the defendant in 1897, as before stated. In the deeds to the defendant from the grantees of Conn, who acquired his title from Chittenden and McCoy, as above stated, no reference is made to the said stipulation in the deed from McCoy to Chittenden. Upon the site of the McCoy house an expensive residence was erected in 1898.

If the stipulation in the deed from McCoy to Chittenden in 1830, read in the light of the circumstances then existing and the subsequent conduct of the owners of the land upon

both sides of the street, does not amount to an express agreement by said owners that the land west of the line described in said deed shall remain open to the public as a highway, and that the lines of the highway as fixed by the layout of 1828 shall, at this place, so far as it could be accomplished by said property owners, be changed,—the facts are sufficient to support the conclusion that practically that result has been effected by the conduct of the property owners and by public use with the knowledge and acquiescence of such owners, by which, since at least 1834, the McCoy fence has marked the limit of the highway on the west, and for more than twenty-five years the Conn fence has marked its eastern boundary.

While, strictly speaking, the public has not been disseized by the adverse occupation of the owners of the McCoy premises, it has, probably, by lapse of time and by adoption of the highway as bounded by the McCoy fence, lost its right to open the street west of that line under the original layout. *Derby* v. *Alling*, 40 Conn. 410, 436; *New York, N. H. & H. R. Co.* v. *New Haven*, 46 Conn. 257.

It is not necessary to decide whether the facts in the finding as corrected are wholly inconsistent with any inference other than the one that a dedication has been effected. The trial court has not passed upon the question whether that conclusion ought not to be drawn; it has, in effect, ruled that the facts as stated in the correction, which we have said should have been made, were immaterial, and therefore excluded them from its finding of the material facts upon which its judgment was founded. The neglect to treat these facts as material, was error, and this error may have influenced, and presumably did influence, the conclusion of the trial court. A new trial should therefore be granted.

There is error and a new trial is granted.

In this opinion the other judges concurred.