In this action the two plaintiffs are the separate owners of land and one-family dwelling houses which front on Pine Street in the Town of Watertown, Connecticut.
They seek recovery of damages from the Town of Watertown; the Evergreen Cemetery Association, Inc, which owns and operates a cemetery upon land which abuts Pine Street on its west end; Warren A. Parker, Wilmot Hungerford and W. Harry Byrnes, who are selectmen of the defendant, Town of Watertown, all for alleged trespass in cutting trees and shrubbery at the westerly end of Pine Street, in the Town of Watertown. The plaintiffs also seek "an injunction restraining the defendants from continuing said thoroughfare and compelling them to restore the same to its natural condition."
The dispute among these parties arises out of these facts:
In and prior to 1924, Harold J. Budge and William Walker owned a tract of land in Watertown, Litchfield County, Connecticut, which they desired to develop for the sale of building lots.
In order to achieve this object, on the 18th day of February, *Page 430 
1924, Budge and Walker duly filed, in the office of the town clerk of the Town of Watertown, a map of the proposed development, Exhibit A-1.
Subsequently, in October, 1925, Budge and Walker duly filed in the office of the town clerk of the Town of Watertown a map in which the details of the proposed development, including the layout of Pine Street, were duly set forth.
This map was subsequently duly approved by the then selectmen of the Town of Watertown on February 26, 1926 (Exhibit B), and it is entitled "Revised Plan of Building Lots formerly of Budge and Walker on Pine Street."
At the time when this map was filed section 1475 of the General Statutes, Revision of 1918, was entitled "Bounds of new highways, how marked and recorded." The then existing section 1475 is now entitled section 1464, Revision of 1930. These two sections are, substantially, similar except that the present section 1464 does not contain a concluding penalty sentence as did its predecessor, section 1475.
This section then provided, as it now does, that "whenever a new highway or street [is] shall have been laid out .... such highway or street shall be marked or defined in the following manner: At the beginning and termination by .... bounds on each side...."
In accordance with the provisions of this statute, the map (Exhibit B) delineated stone bounds at the westerly and easterly ends of Pine Street.
This statute also contains this sentence: "The authorities of towns .... making the layout shall at least once in five years personally examine such bounds and renew all lost or misplaced ones.... The authorities of towns .... making such layout shall have an adequate description of such bounds recorded in towns in the town clerk's office...."
Since there is no evidence to the contrary, and in view of the presumption that public officers are presumed to do their duty, stated in these words: "Every man acting officially shall be presumed to have done his duty, until the contrary appears" (Gett vs. Isaacson, 98 Conn. 539, 543, and cases cited), it is found that, at all times since Exhibit B was duly filed in the office of the town clerk at Watertown, these bounds have ever since February, 1926, been and still are visible and present at each corner of each end of that highway. *Page 431 
These stone bounds were duly installed by a surveyor who was employed and paid to make the map (Exhibit B) and to install the bounds.
The designation of the stone bounds upon the revised map would seem to have been a substantial compliance with the precise requirements of section 1464, which requires that such stone bounds be portrayed and delineated upon that map.
Since the revised plan (Exhibit B) was approved in February, 1926, it does not appear that there has been any actual or attempted alteration of the boundaries, extent and limit of Pine Street, as portrayed on the original map (Exhibit A-1) and upon the subsequent map designated as the revised plan (Exhibit B).
After the filing of these two maps conveyances of certain lots bordering on Pine Street were made in the following order:
Exhibit C-C, September 3, 1924, Budge and Walker to Albert Reymond, bounded northerly, 60 feet on Pine Street, a proposed street.
Exhibit E-E, June 1, 1925, Budge and Walker to Truman M. Curry, bounded on a proposed street designated as Pine Street.
Exhibit D-D, June 5, 1925, Budge and Walker to Albert Reymond, bounded northerly on Pine Street, a proposed highway.
Exhibit 13, November 23, 1925, Budge to Walker, bounded 167 feet on Pine Street.
Exhibit 14, November 23, 1925, Walker to Budge, bounded 60 feet on Pine Street.
Exhibit 15, November 23, 1925, Budge to Walker, bounded on Pine Street, a proposed highway.
Exhibit G. January 8, 1926, Budge bond for a deed to Johnson, bounded on Pine Street, a proposed street.
Exhibit L, March 1, 1926, Budge to Johnson, 60 feet on Pine Street, a proposed street.
Exhibit C, March 29, 1926, Walker to Griffin, bounded on Pine Street.
Exhibit 17, February 2, 1927, Walker to plaintiff, Kopp, *Page 432 
lots on a map marked "Revised Plan of Building Lots, Formerly of Budge and Walker, Pine Street, Watertown, Connecticut, October 1925", bounded southerly 120 feet on Pine Street.
Exhibit K, July 6, 1928, Walker to Johnson, land bounded on Pine Street, a public highway. It should be observed that this deed, Exhibit K, dated July 6, 1928, is the first one in which the land is referred to as bounded on Pine Street, a public highway.
Exhibit 22, July 6, 1928, Johnson to the Waterbury Savings Bank, bounded on Pine Street.
Exhibit 18, August 14, 1928, Johnson to Budge, land bounded on Pine Street, a public highway.
Exhibit 19, April 1, 1929, Walker to Church, described as bounded on Pine Street, a public highway. Again it should be observed that Pine Street is referred to as "a public highway."
Exhibit 20, January 7, 1932, Walker to his wife, Phoebe walker, land bounded on Pine Street — again referred to as a public highway.
Exhibit 21, December 3, 1938, Phoebe Walker to the plaintiff, Kopp, land bounded on Pine Street.
Prior to the 26th day of September, 1925, the owners of this development requested the then selectmen of the Town of Watertown to include in their call for the annual town meeting a notice that the selectmen would consider the acceptance of Pine Street as a public highway.
Due to this request, on September 26, 1925, the selectmen of the Town of Watertown duly issued a call or warning for the annual town meeting of the Town of Watertown. In that call eleven items for action were specified and the eighth item was as follows: "To take action on the layout of a public highway in Watertown to run westerly from North Street, known as Pine Street." (Exhibit T.)
On October 5, 1925, the legal voters of the Town of Watertown held a meeting in which 21 motions were made. Motion 16 read as follows: "That the selectmen be instructed to investigate the matter of accepting Pine Street, in Watertown, and to report to adjourned annual town meeting in March." *Page 433 
Motion No. 1, at that meeting, was that: "This meeting be adjourned to the first Monday in March, 1926."
On March 1, 1926, the legal voters of the Town of Watertown held an adjourned annual town meeting. At that meeting five motions were made, including the motion to adjourn. The third motion was as follows: "That Pine Street, in Watertown, be accepted. It was so voted."
In paragraph 5 of the plaintiffs' complaint it is alleged, substantially, that as these houses were erected and the lots sold to purchasers, that the developers, Budge and Walker, stipulated and agreed with the purchasers "that the said proposed Pine Street should be a one-end street, and that the same should not be changed or altered so that the westerly and unimproved end of said street should ever be opened for public travel by connecting it with the roadways of the Evergreen Cemetery Association." There is no evidence that either of the developers ever made such an agreement with any purchaser. None of the deeds contain any such agreement or stipulation. No writing was ever executed between or among the developers and any of the purchasers concerning such a stipulation and agreement.
While upon the stand the witness, Walker, first said that he instructed the surveyor, Bronson Lockwood, to reserve 12 inches of the land at the westerly end of Pine Street to the ownership of Walker, Later Walker equivocated on this statement and the witness, Bronson Lockwood, definitely stated, without equivocation on cross-examination, that no such instruction was ever given to him. It is found that Walker gave no such instructions and that it was not in his mind to make the reservation of 12 inches at the westerly end of Pine Street when he ordered the map to be made.
In the following deeds Pine Street was described by the owners of the development as a public highway: July 6, 1928, Exhibit K; Exhibit 18 — August 14, 1928; Exhibit 19, — April 1, 1929; Exhibit 20 — January 7, 1932.
Coincident with the filing of the map and, subsequently, coincident with the execution and delivery of deeds of lots to various purchasers. Walker declared it to be his intention to dedicate to the public all of Pine Street as delineated on the map (Exhibit B) so that Pine Street would end at the wire fence then standing at the easterly end of the land which is now owned by the Evergreen Cemetery Association. *Page 434 
"An intention on the part of the grantor to withhold his interest in the road after parting with all his interest in the land adjoining, is never presumed. It ought to appear in clear and explicit terms, so that the grantee may understand that the grantor's interest in the road is not conveyed."Champlin vs. Pendleton, 13 Conn. 23, 26.
"`Dedication is an appropriation of land to some public use, made by the owner of the fee, and accepted for such use by and in behalf of the public.'.... It implies two things: an intention on the part of the owner to devote it to a public use, and an acceptance of it for such use by the public."Town of Kent vs. Pratt, 73 Conn. 573, 578.
".... It is not necessary that an actual intention should be found to have existed in the mind of the owner, at the time of the alleged dedication, to appropriate his land to a public use. It is the purpose as manifested by his acts, rather than the intention actually existing in his mind, which the law regards essential to an implied dedication.... `The owner cannot, after acceptance by the public, recall the appropriation.'" Id. 579.
On or about the first day of August, 1940, the defendant, the Evergreen Cemetery Association, entered upon land at the westerly end of Pine Street and removed trees, shrubbery and grass, and continued the roadway across on to its own land so that the roadway on the property of the Evergreen Cemetery Association was connected with Pine Street.
It seems more probable than otherwise that, when each of these plaintiffs bought her or his lot, it did not occur to any of the parties concerned that the end of Pine Street would ever be broken through by anyone. At that time it did not lie in the minds of the parties to discuss the possibility or the probability of the Evergreen Cemetery Association breaking through the property line.
One of the substantial claims made by these plaintiffs is that the Evergreen Cemetery Association was not an adjoining or abutting owner, and, therefore, had no interest in Pine Street nor any right to enter upon it.
The Evergreen Cemetery Association does not own land on either side of Pine Street. Its land "abuts" the westerly end of Pine Street.
"Abutting" means to end, to border on, to touch, and includes *Page 435 
any property that abuts or adjoins. Property at one end of a street sought to be vacated held "abutting" property requiring publication or ordinance where owner's consent is not filed. 1 Words and Phrases (Perm. ed.) p. 191.
"Abutting" implies a closer proximity than the term "adjacent", and is an apt term to use as applied to reversion where there is a vacation of a street or alley. Id. 191.
"Bounding" and "abutting" on the improvement is synonymous with "abutting"; the word "front" indicating the extent to which the lot is bounded by the highway. Id. 191.
"Abut" means to touch at the end; to be contiguous; join at a border or boundary; terminate; to end at; to border on; to reach or touch with an end. Id. 191.
Property "abuts" on a street or highway when there is no intervening land between it and such street or highway. Id. 194.
"Abutting" as used in an ordinance providing for a levy of assessment on all lots. "abutting" on the line of a street to be improved, was intended to apply to lots whose sides, as well as ends, were bounded by the line of the street to be improved, and, where the streets in front and at the side were both to be paved, the corner lot should bear the expense of the improvement in front of the side as well as of the end of the lot. Id. 195.
The opposite extreme is found in Manners vs. City ofWaterbury, 86 Conn. 573, where, at page 575, our Supreme Court said: "The word `affected' is not used here in that comprehensive sense which make it include all property owners who might have the remote and indeterminate interest arising from a possibility that they might thereafter be assessed for a special benefit accruing to their property by reason of the public work."
The designation of those who are entitled to notice or who may have an interest in land adjoining highways varies in our various statutes. The references are as follows:
In section 1425 of the General Statutes, Revision of 1930, to those "owning or occupying land abutting on any highway."
In section 1440, to "parties to be benefited."
In section 1441, "notice . . . . to the parties interested." *Page 436 
In section 1438, to "owner of land adjoining a public highway or of any interest in such land."
In section 1444, to "owners of land abutting on such highways" and for "notice to the parties in interest."
In section 1447, to those "on land abutting on the highway."
In section 1448, to "parties in interest."
In section 1449 to "any party interested."
In section 1451 to "all persons interested;" section 1457.
In section 1462, to those "adjoining such highway" section 1463.
In addition to the statutory and judicial recognition of the rights of those other than adjoining owners or abutting owners, it should be observed that section 1421 recognizes the interest of the unorganized public by providing that "six or more citizens of this state" may petition to the county commissioners to compel the repair of highways and "to remove or cause to be removed any encroachments upon any highway in such town."
This is a lengthy section and takes up page 488 and five lines of page 489 of the first volume of the Revision of 1930.
In paragraph 17 of the complaint, it is alleged, substantially, that the Evergreen Cemetery Association did this work upon the westerly end of Pine Street "without proper authority from the selectmen of the town of Watertown, or the town", and its selectmen permitted the same to be done without legal justification."
This allegation in the pleadings is followed by the plaintiffs' 39th claim of law, as filed, in which it is asserted that because the defendant, the Evergreen Cemetery Association, Inc., does not own any of the 15 lots conveyed by the original grantors, it then has no rights in Pine Street.
If it be assumed and found that Pine Street is a public highway, then the rights of the defendant, Evergreen Cemetery Association, Inc., are not limited to nor necessarily based upon any conveyance from the original owners, because this assertion on behalf of the plaintiffs overlooks possible rights or definitely ascertained rights of the organized public or members of it, *Page 437 
as well as of those persons owning land abutting or adjoining the public highway.
"Had this extension of a curb and sidewalk, found to have been previously laid on the westerly side of Spencer Street south of the defendant's land, been carried out in the same way by a village improvement society with funds subscribed for that purpose, with the aid and approval of the selectmen of the town and warden and burgesses of the borough, and consent of the defendant, the claim that the society had by this action rendered itself liable to an indictment or to an action for damages for an encroachment upon the highway, or obstruction of public travel, could not for a moment be entertained, notwithstanding it does not appear that the warden and burgesses had taken the formal steps necessary to give the sanction and authority of the borough to the laying of the curb and sidewalk. No ground of liability for such action is supplied by the fact that the improvement was made by the defendant at its own expense, in view of the improvement of its land involved in the improvement of the highway." Parsonsvs. Litchfield County Hospital, 80 Conn. 525, 528.
"By the common law, every encroachment or incumbrance upon a highway, by which it is rendered less commodious to the people, is a public nuisance, and may be removed, by any individual." Burnham vs. Hotchkiss, 4 Conn. 310, 320.
"The defendants were justified in removing them, whether they acted with or without the authority of the surveyor." Id. 321.
"Both the common law and the statute, in explicit terms, give to any person the power of abating a common nuisance." Id. 321.
"But it is asked, may any person remove ornamental trees, posts, and sidewalks placed upon highways? The answer is obvious. If they are so placed as to become a common nuisance, they may be lawfully removed." Id. 322.
"Every proprietor adjoining a highway has a right to reasonable access to its travelled part, and any fence, c., which shall so annoy or encumber it, as essentially to interfere with this right, is a [nuisance], and may be removed, by such proprietor." Hubbard vs. Deming. 21 Conn. 356, 360.
"Besides, the defendants were part of the public, and had *Page 438 
a right, as travellers, to get on to it and pass along any part of it, which it was necessary or convenient for them to use;
and, if obstructed by the plaintiff's fence, they had a right to remove it, although the public generally was not affected, nor the public travel generally hindered, nor the road made less commodious for common use." Id. 360.
In that case it was said the charge of the judge of the county court was erroneous because it left it so that the jury "had only to consider the rights of the traveling public and the plaintiff's duty as to them, without regard to the defendant's rights as an adjoining proprietor." Id. 359.
In paragraph 15 of the complaint the plaintiffs allege, substantially, that the Town of Watertown has never laid out the street in question as a public highway and that no notification and so forth has been given, and that therefore Pine Street is not a public highway.
In City of Hartford vs. New York and New England R.R.Co., 59 Conn. 250, at page 252, our Supreme Court said, in reference to objections to the admission of evidence: "It [the defendant] claimed that, under the allegations in the complaint of a `public street or highway duly and legally established,' evidence of a highway by dedication was not admissible.... The court admitted the evidence, and properly. The words `duly and legally established' are not confined to the technical meaning claimed for them. A highway created by dedication may, without violence to language or the general understanding of the meaning of terms, be said to be duly and legally established."
"The existence of a highway may be shown by proof of the dedication of the land for that purpose and its acceptance by the public." Id. 253.
And further: "Our court holds, as matter of law, that, in order to create a public highway by dedication, the owner of the land must unequivocally dedicate it to the use of the public, and the public must accept it; that the acceptance need not be by public vote or any act of an official or corporate body, but may be presumed if the public enter upon and use the highway as a highway." Id. 254.
"We find little or no disparity in the authorities upon the proposition that it is a question of fact for the jury to decide, on the evidence in each particular case, whether the facts *Page 439 
show an intention to dedicate the locus in quo to public use. A question of intention must necessarily be a pure question of fact...." Id. 257.
"The acceptance of a street by the public is always one of fact, the law merely contributing its definition of the term." Id. 258.
A charge to the same effect was sustained in Riley vs. Hammel,38 Conn. 574, at page 576, where the court said, among other things, that "the acceptance may not be required to be a public vote, or any act of an official or corporate body, but will be presumed if the public enter upon and use the way as a highway; and such user need not continue for a period of fifteen years, in order to constitute such way a public highway."
In paragraphs 3 and 4 of the complaint it is, substantially, alleged that Pine Street was never dedicated, or accepted, or used by the public for its entire length but that a certain portion of it embraced within the territory 90 feet easterly from the easterly boundary line of the Evergreen Cemetery Association's land on the south side, and 100 feet easterly from that point on the north side, was never made use of by the public and was never accessible to the public and so was not part of the street, either accepted, dedicated or used by the public, and that, for that reason, the Cemetery Association was a trespasser and the selectmen — particularly the selectman, Parker, abused and exceeded authority in permitting the Cemetery Association to act as it did.
There is nothing in the record to indicate that, either by intention, design or anticipation, was any distinction made by any of the interested parties between the two ends of the street.
As a continuous and continued procedure in the whole matter the only reference to Pine Street is that found upon the original plan and the revised plan and in the various deeds. In none of these instruments does there appear to have been any differentiation between either end of Pine Street, but Pine Street seems to have been treated as an integrated whole.
In the 41st claim of law filed by the plaintiff it is set out that "there probably was a dedication and acceptance of the easterly end of Pine Street."
It is not possible to find, in any part of the evidence, that *Page 440 
there was any attempted line of demarcation between the dedication and acceptance of various parts of Pine Street. Either the whole proposed street was dedicated and accepted or none of it was.
This is pertinent in view of the allegation of the plaintiff's pleadings that there was no "layout" of Pine Street.
All of the evidence indicated that the street was laid out in accordance with the various sections of the statute; that it was accepted in accordance with the various sections of the statute and likewise dedicated.
"In view of the location and character of this street, it was not to be expected that the town would work the full width of it or the public use it. The use made of it was such as might be expected under the circumstances, and the fact that there was little if any actual use of the portion of the street west of the traveled path, did not require a conclusion that the street had not been accepted by the public as dedicated for the full width of fifty feet." Levine vs. Town of WestHaven, 120 Conn. 207, 210.
"The existence of the express restrictions in the deed indicates that those restrictions and no others were the restrictions which it was contemplated in the adoption of the general plan were to be imposed upon all the lots in the restricted tract, and negatives the existence of any implied covenants inconsistent with those expressly stated in the deeds." Hicksonvs. Noroton Manor, Inc., 118 Conn. 180, 189.
".... in the absence of express restrictions, it might fairly be assumed that purchasers of lots relied upon the preservation of such design, and the law might imply a covenant to prevent a change which would defeat the whole plan of development." Id. 190.
"At the time of the delivery of this deed the streets named in the deed and in the resolution were not all worked or opened for travel to the same extent that they were laid down on the map." Town of Derby vs. Alling, 40 Conn. 410, 414.
"We think therefore that the deed must be construed as embracing all the land which is included within the limits of the street as delineated on the map." Id. 432.
"If there were absolute technical difficulties in the way of it as a dedication, we would resort to the doctrine of estoppel, *Page 441 
and say the grantor is estopped by his deed and conduct from doing anything to interfere with the opening of the streets in accordance with his deed and maps." Id. 435.
As to the opening and use of the entire street, it was said in that case that streets were not "to be necessarily opened and worked immediately, but to be opened whenever within a reasonable time thereafter the opening of it to its full extent should be required; and that the acceptance of the deed by the town, and the acceptance by the unorganized public of the portions of the street which were opened, is a constructive acceptance of the dedication of the entire street." Id. 435.
"If they should say that a dedication to be valid must be immediate, and that a dedication to be accepted and used in future is void, or at any rate subject to revocation, and that therefore their deed was inoperative because not acted upon immediately, the reply we think would be, that the grantors in the deed could not have contemplated the immediate opening and making of all the streets of the borough...." Id. 434.
After the Cemetery Association broke through the westerly end of Pine Street in August, 1940, then the selectmen did work there and the town put a sprinkling of gravel and later oiled the gravel.
The improved portion of Pine Street has been oiled by the town every summer for a number of years last past.
On many times and on various occasions the unimproved portion of Pine Street was used by visitors to the residents of that street for parking purposes and for the purpose of turning their automobiles around when visiting there.
Previous to that time the town had, for many years, employed a snow plow in keeping Pine Street open and the plow was, on occasion, driven as far as the westerly end of Pine Street, the then Cemetery Association line.
A water main was installed in Pine Street in June, 1924. A sewer main was installed there in August, 1936.
The westerly end of the water main is 55 feet easterly from the westerly end of the street as delineated on the map. the westerly end of the sewer main is 38 feet easterly from the westerly end of the street as delineated on the map.
It has been a consistent rule of the Town of Watertown *Page 442 
for many years last past not to permit an installation of a sewer pipe in any street other than in a public street.
The plaintiffs are not entitled to the equitable relief prayed for because they are chargeable with laches in that they permitted the town to change its position and to spend money in "hard surfacing" the westerly portion of Pine Street and, for an unreasonable length of time, they did nothing to test the legality of their claim that the westerly end of Pine Street was not a public highway, although they had full opportunity to have done so between August 1940, when a top dressing was placed on the highway, and June 1941, when the westerly end of Pine Street was "hard surfaced" by the town.
The main claim for damages seems to be directed against the defendant, Parker. He was a selectman. He acted with care and caution in that he sought and received the advice of three competent counsel, not in any way associated with one another. Their advice was sufficient to induce the man of ordinary prudence to believe that he was acting in accordance with the law and with his duties as selectman.
The actions of the defendant, Parker, are to be distinguished from those of the defendant, Selectman Peck, as set out inWadsworth vs. Town of Middletown, 94 Conn. 435, where it appears that the defendant, Peck, wantonly ordered another to cut a large number of shrubs, bushes and trees, between a boundary wall and the edge of the traveled way for a distance of 2,500 feet. The trees cut were 110 and each of them was from three to seven inches in diameter and they stood at varying distances from 12 to 28 feet from the edge of the traveled way and this cutting included a large number of bushes, shrubs and smaller trees which stood within 12 feet from the edge of the traveled way.
In that case the larger number of bushes and trees which were cut did not obstruct the highway or interfere with its convenient use by the public.
In that case the defendant, Peck, was possessed of no knowledge of the extent of the obstruction or of the requirements to make the highway reasonably safe for public travel, nor did he undertake to require such information but he sent one Atkins, whom he had occasionally hired to make repairs on the town highways, with a gang of men with instructions to "trim off the sides of the roads to the wall and make a good job of it." Id. 442. *Page 443 
One of the items of the damages claimed by these plaintiffs is found in paragraphs 16, 17 and 18, particularly as to the deprivation of the claimed ownership of the trees belonging to the plaintiffs, occasioned by the acts of the various defendants. The trees cut numbered three. They were at the extreme end of the westerly line of Pine Street. They were decadent trees and had passed their maturity and were gradually disintegrating.
The opening made by the Cemetery Association on to its land from Pine Street was about 21 feet, which was less than one-half of the width of Pine Street, as delineated on the map (Exhibit B-1).
In paragraph 19 of the plaintiff's complaint it is alleged that "in opening said street the defendants have collected and turned down upon said street a large amount of water which has flooded and damaged the properties of the plaintiffs...."
On January 15, 1940, 12 inches of water were pumped from the cellar of one of these houses.
On March 30, 1940, preceding August 1, 1940, 18 inches of water were required to be pumped out of the Johnson property by a plumber called by the owner or a tenant.
Since August 1, 1940, there has been no such recurrence of entry of water upon any of these properties and it is very evident that, while some water does enter upon these properties, its entrance is in no way ascribable to the actions of any of the defendants.
There is a further claim that the grade was altered and that this alteration of the grade, without legal or proper notice to the plaintiffs, has occasioned damage to them. There was no alteration of the grade. It was the right of the Cemetery Association to enter upon the land and in doing so a normal grade occasioned by a fill of about two feet was made. This resulted in no damage to the plaintiff nor was it a variation of the grade.
The issues are found in favor of all of the defendants.
 Judgment may be entered in their favor and for them to recover their costs.