MILDRED FRANTZ
*vs.*
PETER FRANTZ

Superior Court        New Haven County        File No. 62097

1924, Budge and Walker duly filed, in the office of the town clerk of the Town of Watertown, a map of the proposed development, Exhibit A-1.

Subsequently, in October, 1925, Budge and Walker duly filed in the office of the town clerk of the Town of Watertown a map in which the details of the proposed development, including the layout of Pine Street, were duly set forth.

This map was subsequently duly approved by the then selectmen of the Town of Watertown on February 26, 1926 (Exhibit B), and it is entitled "Revised Plan of Building Lots formerly of Budge and Walker on Pine Street."

At the time when this map was filed section 1475 of the General Statutes, Revision of 1918, was entitled "Bounds of new highways, how marked and recorded." The then existing section 1475 is now entitled section 1464, Revision of 1930. These two sections are, substantially, similar except that the present section 1464 does not contain a concluding penalty sentence as did its predecessor, section 1475.

This section then provided, as it now does, that "whenever a new highway or street [is] shall have been laid out....such highway or street shall be marked or defined in the following manner: At the beginning and termination by....bounds on each side...."

In accordance with the provisions of this statute, the map (Exhibit B) delineated stone bounds at the westerly and easterly ends of Pine Street.

This statute also contains this sentence: "The authorities of towns....making the layout shall at least once in five years personally examine such bounds and renew all lost or misplaced ones....The authorities of towns....making such layout shall have an adequate description of such bounds recorded in towns in the town clerk's office...."

Since there is no evidence to the contrary, and in view of the presumption that public officers are presumed to do their duty, stated in these words: "Every man acting officially shall be presumed to have done his duty, until the contrary appears" (*Gett vs. Isaacson,* 98 Conn. 539, 543, and cases cited), it is found that, at all times since Exhibit B was duly filed in the office of the town clerk at Watertown, these bounds have ever since February, 1926, been and still are visible and present at each corner of each end of that highway.

These stone bounds were duly installed by a surveyor who was employed and paid to make the map (Exhibit B) and to install the bounds.

The designation of the stone bounds upon the revised map would seem to have been a substantial compliance with the precise requirements of section 1464, which requires that such stone bounds be portrayed and delineated upon that map.

Since the revised plan (Exhibit B) was approved in February, 1926, it does not appear that there has been any actual or attempted alteration of the boundaries, extent and limit of Pine Street, as portrayed on the original map (Exhibit A-1) and upon the subsequent map designated as the revised plan (Exhibit B).

After the filing of these two maps conveyances of certain lots bordering on Pine Street were made in the following order:

Exhibit C-C, September 3, 1924, Budge and Walker to Albert Reymond, bounded northerly, 60 feet on Pine Street, a proposed street.

Exhibit E-E, June 1, 1925, Budge and Walker to Truman M. Curry, bounded on a proposed street designated as Pine Street.

Exhibit D-D, June 5, 1925, Budge and Walker to Albert Reymond, bounded northerly on Pine Street, a proposed highway.

Exhibit 13, November 23, 1925, Budge to Walker, bounded 167 feet on Pine Street.

Exhibit 14, November 23, 1925, Walker to Budge, bounded 60 feet on Pine Street.

Exhibit 15, November 23, 1925, Budge to Walker, bounded on Pine Street, a proposed highway.

Exhibit G, January 8, 1926, Budge bond for a deed to Johnson, bounded on Pine Street, a proposed street.

Exhibit L, March 1, 1926, Budge to Johnson, 60 feet on Pine Street, a proposed street.

Exhibit C, March 29, 1926, Walker to Griffin, bounded on Pine Street.

Exhibit 17, February 2, 1927, Walker to plaintiff, Kopp,

"An intention on the part of the grantor to withhold his interest in the road after parting with all his interest in the land adjoining, is never presumed. It ought to appear in clear and explicit terms, so that the grantee may understand that the grantor's interest in the road is not conveyed." *Champlin vs. Pendleton,* 13 Conn. 23, 26.

" 'Dedication is an appropriation of land to some public use, made by the owner of the fee, and accepted for such use by and in behalf of the public.'. . . .It implies two things: an intention on the part of the owner to devote it to a public use, and an acceptance of it for such use by the public." *Town of Kent vs. Pratt,* 73 Conn. 573, 578.

". . . .It is not necessary that an actual intention should be found to have existed in the mind of the owner, at the time of the alleged dedication, to appropriate his land to a public use. It is the purpose as manifested by his acts, rather than the intention actually existing in his mind, which the law regards essential to an implied dedication. . . . 'The owner cannot, after acceptance by the public, recall the appropriation.' " Id. 579.

On or about the first day of August, 1940, the defendant, the Evergreen Cemetery Association, entered upon land at the westerly end of Pine Street and removed trees, shrubbery and grass, and continued the roadway across on to its own land so that the roadway on the property of the Evergreen Cemetery Association was connected with Pine Street.

It seems more probable than otherwise that, when each of these plaintiffs bought her or his lot, it did not occur to any of the parties concerned that the end of Pine Street would ever be broken through by anyone. At that time it did not lie in the minds of the parties to discuss the possibility or the probability of the Evergreen Cemetery Association breaking through the property line.

One of the substantial claims made by these plaintiffs is that the Evergreen Cemetery Association was not an adjoining or abutting owner, and, therefore, had no interest in Pine Street nor any right to enter upon it.

The Evergreen Cemetery Association does not own land on either side of Pine Street. Its land "abuts" the westerly end of Pine Street.

"Abutting" means to end, to border on, to touch, and in-

cludes any property that abuts or adjoins. Property at one end of a street sought to be vacated held "abutting" property requiring publication or ordinance where owner's consent is not filed. 1 Words and Phrases (Perm. ed.) p. 191.

"Abutting" implies a closer proximity than the term "adjacent", and is an apt term to use as applied to reversion where there is a vacation of a street or alley. Id. 191.

"Bounding" and "abutting" on the improvement is synonymous with "abutting"; the word "front" indicating the extent to which the lot is bounded by the highway. Id. 191.

"Abut" means to touch at the end; to be contiguous; join at a border or boundary; terminate; to end at; to border on; to reach or touch with an end. Id. 191.

Property "abuts" on a street or highway when there is no intervening land between it and such street or highway. Id. 194.

"Abutting" as used in an ordinance providing for a levy of assessment on all lots "abutting" on the line of a street to be improved, was intended to apply to lots whose sides, as well as ends, were bounded by the line of the street to be improved, and, where the streets in front and at the side were both to be paved, the corner lot should bear the expense of the improvement in front of the side as well as of the end of the lot. Id. 195.

The opposite extreme is found in *Manners vs. City of Waterbury*, 86 Conn. 573, where, at page 575, our Supreme Court said: "The word 'affected' is not used here in that comprehensive sense which would make it include all property-owners who might have the remote and indeterminate interest arising from a possibility that they might thereafter be assessed for a special benefit accruing to their property by reason of the public work."

The designation of those who are entitled to notice or who may have an interest in land adjoining highways varies in our various statutes. The references are as follows:

In section 1425 of the General Statutes, Revision of 1930, to those "owning or occupying land abutting on any highway."

In section 1440, to "parties to be benefited."

In section 1441, "notice . . . . to the parties interested."

a right, as travellers, to get on to it and pass along any part of it, which it was necessary or convenient for *them to use*; and, if obstructed by the plaintiff's fence, they had a right to remove it, although the public generally was not affected, nor the public travel generally hindered, nor the road made less commodious for common use." Id. 360.

In that case it was said the charge of the judge of the county court was erroneous because it left it so that the jury "had only to consider the rights of the traveling public and the plaintiff's duty as to them, without regard to the defendant's rights as an adjoining proprietor." Id. 359.

In paragraph 15 of the complaint the plaintiffs allege, substantially, that the Town of Watertown has never laid out the street in question as a public highway and that no notification and so forth has been given, and that therefore Pine Street is not a public highway.

In *City of Hartford vs. New York and New England R.R. Co.*, 59 Conn. 250, at page 252, our Supreme Court said, in reference to objections to the admission of evidence: "It [the defendant] claimed that, under the allegations in the complaint of a 'public street or highway duly and legally established,' evidence of a highway by dedication was not admissible.... The court admitted the evidence, and properly. The words 'duly and legally established' are not confined to the technical meaning claimed for them. A highway created by dedication may, without violence to language or the general understanding of the meaning of terms, be said to be duly and legally established."

"The existence of a highway may be shown by proof of the dedication of the land for that purpose and its acceptance by the public." Id. 253.

And further: "Our court holds, as matter of law, that, in order to create a public highway by dedication, the owner of the land must unequivocally dedicate it to the use of the public, and the public must accept it; that the acceptance need not be by public vote or any act of an official or corporate body, but may be presumed if the public enter upon and use the highway as a highway." Id. 254.

"We find little or no disparity in the authorities upon the proposition that it is a question of fact for the jury to decide, on the evidence in each particular case, whether the facts

show an intention to dedicate the *locus in quo* to public use. A question of intention must necessarily be a pure question of fact...." Id. 257.

"The acceptance of a street by the public is always one of fact, the law merely contributing its definition of the term." Id. 258.

A charge to the same effect was sustained in *Riley vs. Hammel,* 38 Conn. 574, at page 576, where the court said, among other things, that "the acceptance may not be required to be a public vote, or any act of an official or corporate body, but will be presumed if the public enter upon and use the way as a highway; and such user need not continue for a period of fifteen years, in order to constitute such way a public highway."

In paragraphs 3 and 4 of the complaint it is, substantially, alleged that Pine Street was never dedicated, or accepted, or used by the public for its entire length but that a certain portion of it embraced within the territory 90 feet easterly from the easterly boundary line of the Evergreen Cemetery Association's land on the south side, and 100 feet easterly from that point on the north side, was never made use of by the public and was never accessible to the public and so was not part of the street, either accepted, dedicated or used by the public, and that, for that reason, the Cemetery Association was a trespasser and the selectmen—particularly the selectman, Parker, abused and exceeded authority in permitting the Cemetery Association to act as it did.

There is nothing in the record to indicate that, either by intention, design or anticipation, was any distinction made by any of the interested parties between the two ends of the street.

As a continuous and continued procedure in the whole matter the only reference to Pine Street is that found upon the original plan and the revised plan and in the various deeds. In none of these instruments does there appear to have been any differentiation between either end of Pine Street, but Pine Street seems to have been treated as an integrated whole.

In the 41st claim of law filed by the plaintiff it is set out that "there probably was a dedication and acceptance of the easterly end of Pine Street."

It is not possible to find, in any part of the evidence, that

for many years last past not to permit an installation of a sewer pipe in any street other than in a public street.

The plaintiffs are not entitled to the equitable relief prayed for because they are chargeable with laches in that they permitted the town to change its position and to spend money in "hard surfacing" the westerly portion of Pine Street and, for an unreasonable length of time, they did nothing to test the legality of their claim that the westerly end of Pine Street was not a public highway, although they had full opportunity to have done so between August 1940, when a top dressing was placed on the highway, and June 1941, when the westerly end of Pine Street was "hard surfaced" by the town.

The main claim for damages seems to be directed against the defendant, Parker. He was a selectman. He acted with care and caution in that he sought and received the advice of three competent counsel, not in any way associated with one another. Their advice was sufficient to induce the man of ordinary prudence to believe that he was acting in accordance with the law and with his duties as selectman.

The actions of the defendant, Parker, are to be distinguished from those of the defendant, Selectman Peck, as set out in *Wadsworth vs. Town of Middletown*, 94 Conn. 435, where it appears that the defendant, Peck, wantonly ordered another to cut a large number of shrubs, bushes and trees, between a boundary wall and the edge of the traveled way for a distance of 2,500 feet. The trees cut were 110 and each of them was from three to seven inches in diameter and they stood at varying distances from 12 to 28 feet from the edge of the traveled way and this cutting included a large number of bushes, shrubs and smaller trees which stood within 12 feet from the edge of the traveled way.

In that case the larger number of bushes and trees which were cut did not obstruct the highway or interfere with its convenient use by the public.

In that case the defendant, Peck, was possessed of no knowledge of the extent of the obstruction or of the requirements to make the highway reasonably safe for public travel, nor did he undertake to require such information but he sent one Atkins, whom he had occasionally hired to make repairs on the town highways, with a gang of men with instructions to "trim off the sides of the roads to the wall and make a good job of it." Id. 442.

One of the items of the damages claimed by these plaintiffs is found in paragraphs 16, 17 and 18, particularly as to the deprivation of the claimed ownership of the trees belonging to the plaintiffs, occasioned by the acts of the various defendants. The trees cut numbered three. They were at the extreme end of the westerly line of Pine Street. They were decadent trees and had passed their maturity and were gradually disintegrating.

The opening made by the Cemetery Association on to its land from Pine Street was about 21 feet, which was less than one-half of the width of Pine Street, as delineated on the map (Exhibit B-1).

In paragraph 19 of the plaintiff's complaint it is alleged that "in opening said street the defendants have collected and turned down upon said street a large amount of water which has flooded and damaged the properties of the plaintiffs...."

On January 15, 1940, 12 inches of water were pumped from the cellar of one of these houses.

On March 30, 1940, preceding August 1, 1940, 18 inches of water were required to be pumped out of the Johnson property by a plumber called by the owner or a tenant.

Since August 1, 1940, there has been no such recurrence of entry of water upon any of these properties and it is very evident that, while some water does enter upon these properties, its entrance is in no way ascribable to the actions of any of the defendants.

There is a further claim that the grade was altered and that this alteration of the grade, without legal or proper notice to the plaintiffs, has occasioned damage to them. There was no alteration of the grade. It was the right of the Cemetery Association to enter upon the land and in doing so a normal grade occasioned by a fill of about two feet was made. This resulted in no damage to the plaintiff nor was it a variation of the grade.

The issues are found in favor of all of the defendants.

Judgment may be entered in their favor and for them to recover their costs.